**SO ORDERED.**

**DONE and SIGNED September 19, 2014.**



_____
**JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 11-11805 |
| Kelly Deon Savell | § | |
| | § | Chapter 13 |
| Debtor | § | |

### MEMORANDUM OPINION AND ORDER

It has been common practice in the Shreveport division for attorneys to seek and obtain court approval for the payment of some post-petition and post-confirmation attorney's fees directly from debtor(s). These include "no look" post-confirmation attorney's fees pursuant to the *Amended Standing Order Regarding "No Look" Fees in Chapter 13 Cases* entered September 19, 2013, and post-petition fees not encompassed by the standing order for which a fee application is required. The "No Look" standing order includes a no look fee for certain post-confirmation legal services which are enumerated in the order. These fees include $500.00 for the defense of a motion

1

for relief from the stay, the defense of a motion to dismiss, or a plan modification, $750.00 for the combined defenses of a motion for relief from the stay or motion to dismiss and a plan modification resulting therefrom, $350.00 for post-confirmation motions to sell, incur debt or "substitute collateral-use of cash collateral," and finally $250.00 for post-confirmation objections to claims. In these instances reviewed by the court, these fees were paid directly by the debtor to the attorney prior to seeking court approval of the post-petition fees or the filing of any Rule 2016(b) statement. The fees were paid by the debtor directly to the attorney or law firm who then by motion, application, or by way of response sought court approval of the prior direct payment from the debtor(s).

Pre-confirmation attorney's fees, except retainer amounts, are always paid by the Chapter 13 Trustee pursuant to that same "No Look" standing order or by fee application. Many Chapter 13 cases are filed in this division with no attorney retainer and are commonly referred to as "no money down" cases. This bifurcation of pre-confirmation fees being paid by the Chapter 13 Trustee and some but not all of the post-petition and post-confirmation attorney's fees being paid directly by the debtor is troubling to the court, and this practice predates this Judge's appointment. The court sua sponte has raised the issue of whether these payments are appropriate, if they violate the Bankruptcy Code and/or Bankruptcy Rules, and if, for the orderly administration of Chapter 13 cases, the court should require all Chapter 13 attorney fees post-petition to be exclusively disbursed by the Chapter 13 Trustee. This is not an insignificant issue, as legal fees disbursed by the Chapter 13 Trustee based on her last audit published by the United State Trustee in 2013 totaled $7,480,383, and the court is unable to track or account for the fees that were directly paid by debtor(s) to their lawyers. The amount paid to debtors' attorneys by the Chapter 13 Trustee is 12% of the total amount disbursed by the Chapter 13 Trustee ($62,624,577) in her fiscal year of 2013

2

(see http://www.justice.gov/ust/eo/private_trustee/data_statistics/ch13.htm). Post-confirmation services of the types described by the "No Look" fee order are routine, common, and incur in almost every Chapter 13 case. In a division with a current Chapter 13 case load of 10,473 (per the court's August 2014 Statistical Reporting), if just a quarter of the pending Chapter 13 cases each year requires post-confirmation legal services with a no look post-confirmation attorney's fee that averages $450.00, then over $1,000,000.00 in "No Look," post-confirmation fees are paid to attorneys each year in the Shreveport division.

The Chapter 13 Trustee argues that debtor's counsel is prohibited from accepting post-petition fees directly from a debtor without prior disclosure to the court and urges that a formal Disclosure of Compensation be filed whenever an attorney is to be compensated for work performed. The Trustee bases her arguments primarily on four (4) sources of law: 1) F.R.B.P 2016(b); 2) 11 U.S.C. § 329; 3) 11 U.S.C. § 330; and 4) *Barron v. Countryman*, 432 F.3d 590 (5th Cir. 2005). It is important to note, however, that the Trustee raises this argument only after being directed by the court to brief the issue and that the Trustee's office appears to have remained silent on the issue for many years until this court brought the matter to her attention.

Debtor's counsel argues that the procedure for allowing post-petition direct payments of "No Look" fees in select circumstances "can be efficient, economical, and in the best interest of the debtor and the estate." Counsel points out that the "No Look" fee of $500.00 for his services in this case is not an issue, in that it is "a pre-calculated lodestar no look fee for [the] post-confirmation defense of a motion for relief from stay pursuant to Section (4)(A) of the Amended Standing Order Regarding "No-Look" Fees in Chapter 13 Cases," entered on September 19, 2013. Counsel claims the $500.00 fee is not at issue, as it is predetermined, and that §330 is only important in so far as its requirement for notice and hearing. Debtor's counsel further claims that

3

11 USC § 329 is only implicated for disclosure requirements and review for excessiveness, in that post-petition monies paid to counsel constitute property of the estate.

Finally, counsel suggests a procedure for use by this court whereby a direct payment by a Debtor to his attorney for post-petition services could be made that would be in compliance with *Barron*. That procedure is as follows: (1) a detailed written contract between the debtor and counsel would be executed; (2) the contract would reflect that the fee is a "fixed no look fee for a designated service that will be held in trust and will not become property of the attorney until approved by the court;" and (3) counsel will then file a Notice of Application to Approve Direct Payment as Compensation for Post-Petition Services, which will disclose the total amount previously approved for all services rendered in the case and will comply with Rule 2002(6).

## FINDINGS OF FACT

Debtor, Kelly Deon Savell filed a voluntary petition for relief under Chapter 13 on July 15, 2011, and was represented by Mr. Sam Henry, IV. Pursuant to 11 U.S.C. § 2016(b), Mr. Henry filed his Disclosure of Compensation and therein certified that he agreed to accept the "No Look" fee of $2,800.00, which was not objected to. On September 27, 2011, a plan was confirmed and the $2,800.00 fee for Mr. Henry was approved. Subsequent thereto, but before debtor changed counsel, all of the $2,800.00 fee was paid to Mr. Henry.

Nearly three (3) years later, on July 23, 2014, a Motion for Relief From Stay was filed by Select Portfolio Servicing (hereafter "Select"), requesting that the Automatic Stay on debtor's principal residence be lifted due to a post-petition default in her direct payments to Select. At that time the debtor's original counsel was not practicing in this division, and the debtor sought the services of another attorney, Mr. Robert Raley, for purposes of enrolling as new counsel and

4

responding to the motion for relief. Debtor's counsel then filed a Motion to Enroll, which was granted on July 28, 2014.

On August 4, 2014, debtor's counsel filed an Opposition to Motion for Relief from Automatic Stay on behalf for the debtor and stated therein that the debtor would either have the funds to bring all arrears current by the date of the hearing on the motion for relief or would make at least one (1) cash payment and file a modified plan to cure the remaining arrears. Additionally, the opposition pleading requested approval of a fee of $500.00 for the "preparation and prosecution" of same and further stated that those monies had been paid directly to debtor's counsel by the debtor. Debtor's counsel did not file a Disclosure of Compensation in conjunction with this fee request and has never made a Rule 2016(b) disclosure.

The original hearing on Select's Motion for Relief was scheduled for September 2, 2014. Prior to that date, the Chapter 13 Trustee had filed no opposition to the requested fee of $500.00 nor to the direct payment arrangement. On September 2, 2014, the parties announced that they had settled the merits of the Motion for Relief, but the court sua sponte continued the matter until September 9, 2014. The court requested that briefs be filed by the Trustee, debtor's counsel, and any other party in interest no later than Monday, September 8, 2014, at 5:00 p.m. regarding the appropriateness of the direct payment by the debtor of attorney's fees to debtor's counsel. Debtor's counsel and the Chapter 13 Trustee filed briefs for consideration.

At the scheduled hearing, both the Chapter 13 Trustee, Lucy Sikes, and debtor's counsel, Robert Raley, were sworn and responded to direct questioning from the court. The court finds both witnesses credible. They both testified that direct payments from debtor's to debtor's attorneys for post-confirmation attorney's fees had been common practice, that Rule 2016(b) statements were not filed, nor amended in these cases that they could remember, nor could they

5

remember a debtor ever amending a budget to reflect a debtor's direct payment to debtor's counsel. In addition, the bifurcation of payments to debtor's counsel from both the Chapter 13 Trustee and the debtor left no way to the court to track, monitor, or account for the total amount that a debtor's attorney had been paid in a specific case except if the court conducted a detailed review of every order ever entered in that case.

## **CONCLUSIONS OF LAW**

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1334 and by virtue of the reference of the District Court pursuant to Local District Court Rule 83.4.1 as incorporated by Local Bankruptcy Rule 9029.3. This is a core proceeding under 28 U.S.C. §157(b).

Read together, 11 U.S.C. § 330(a) and Fed.R.Bankr.P. 2016(a) require that, after the commencement of a chapter 13 case, counsel for the debtor apply for and receive court authorization before collecting any money or property from the debtor. *In re Anderson*, 253 B.R. 14, 20 (Bankr.E.D.Mich. 2000). It is elementary bankruptcy law that all post-petition earnings of a Chapter 13 debtor constitute property of the bankruptcy estate. A chapter 13 debtor has no authority to transfer estate property to an attorney without proper notice to the court. *Barron v. Countryman*, 432 F.3d 590 (5th Cir. 2005). As such, the court cannot condone and takes exception to the current practice in the Shreveport division regarding direct payments from debtor's to debtor's counsel for post-petition and post-confirmation attorney's fees with no disclosure and no prior court approval. Other courts have routinely adopted this position. See also *In re Karen Jensen*, 2008 WL 2405023 (Bkrtcy.E.D.Pa.); *In re Berg*, 356 B.R. 378, 383 (Bankr.E.D.Pa 2006); and *In re Taylor*, 2004 WL 1746112, at 1 (Bankr.D.D.C. Aug. 4, 2004).

The court rejects that any procedure for allowing post-petition direct payments of "No Look" fees from estate property "can be efficient, economical, and in the best interest of the debtor

and the estate" as claimed by debtor's counsel. The estate does not benefit from any direct payment of post-confirmation attorney's fees from the debtor to debtor's counsel. In this division where a majority of the cases filed are Chapter 13 cases and many debtor budgets have expenses well below limits placed in the means test, paying attorney's fees directly to counsel requires the debtor to "rob Peter to pay Paul." The expression refers to times before the Reformation when church taxes had to be paid to St. Paul's church in London and to St. Peter's church in Rome; originally it referred to neglecting the Peter tax in order to have money to pay the Paul tax. This case is a prime example. A Motion for Relief occurred, because the debtor neglected to make direct payments on her principle residence. She diverted her house payments to other uses, because she lacked income or had expenses past her Chapter 13 budget. Requiring or asking a debtor to make a direct payment for post-petition attorney's fees simply encourages the debtor to continue to not make her principle residence payment and become further in arrears. This is especially true where the debtor is aware that the agreement reached between the creditor and the debtor's counsel will allow the debtor to retain the home and cure the post-petition arrears over time in a plan modification. While this arrangement will be beneficial to the debtor's attorney, the court fails to see how there is any benefit to the estate. The diversion of funds from the debtor's budget to the debtor's attorney is clearly contrary to the stated principles of a Chapter 13. To hold otherwise would usurp the court's authority to monitor and control attorney fees of chapter 13 debtor's attorneys and would interfere with the court's jurisdiction over property of the estate.

The court, however, is aware that in certain circumstances a direct payment may not be inappropriate. There are limits on 11 USC §330, and direct payments could be allowed from a source other than the debtor's estate.

The court also admonishes that the fees allows by the *Amended Standing Order Regarding "No Look" Fees in Chapter 13 Cases* are not presumptive fees. Debtor's counsel's allegation that the $500.00 attorney fee is not at issue, as it is predetermined by *Amended Standing Order Regarding "No Look" Fees in Chapter 13 Cases* is incorrect. The *Amended Standing Order Regarding "No Look" Fees in Chapter 13 Cases* expressly provides otherwise. At page 4 the "No Look" order provides as follows: "IT IS ORDERED THAT: Nothing in this Standing Order should be viewed as barring an objection to a presumptive fee request by any party in interest or the Court, sua sponte. In the event of such an objection, after notice and a hearing, the Court may determine the reasonableness and/or appropriateness of a particular fee."

All fees provided by the "No Look" fee order are subject to objection, notice and hearing, and a determination of reasonableness or appropriateness. These fees are the most allowed under the "No Look" fee order, and in many instances they could and should be less than this ceiling amount.

The court also finds that when direct payments are made by a debtor to a debtor's counsel post-petition, the court and all interested parties are robbed of the opportunity to review and object prior to the payment as provided for in the *Amended Standing Order Regarding "No Look" Fees in Chapter 13 Cases*. The practice is in also in direct conflict not only with F.R.B.P. 2016 but also with the requirement to file an addendum under Section 2(C) of the *Amended Standing Order Regarding "No Look" Fees in Chapter 13 Cases*.

The court does not take lightly the failure to disclose by debtor's counsel. There is a duty to disclose all compensation paid or agreed to be paid by the debtor. The disclosure requirement of 11 U.S.C. § 329 is implemented by Fed.R.Bankr.P. 2016(b), *In re Berg*, 356 B.R. 378, 380 (Bankr. E. D. Pa 2006). Counsel for the debtor has failed to comply with any of the provisions of

§ 329 or Rule 2016(b). However, this failure is tempered by three salient facts, and, therefore, the court determines that sanctions past disgorgement are not appropriate. The facts are; first, long time practice in the Shreveport division has allowed such conduct in the past with no repercussions; second, the debtor's attorney openly disclosed the payment and sought court approval, albeit improperly; lastly, the lack of objection by the Chapter 13 over an extended period of time to this local but illogical practice.

While the Bankruptcy Code and Bankruptcy Rule requirements for disclosure, approval, and monitoring discussed are a sufficient legal basis for the court's order in this case, there are matters of case administration that must be addressed. This court presently oversees over 10,000 Chapter 13 cases, and each includes payments for attorney fees. Millions of dollars are paid out in this division to debtor's attorneys for debtor representation each year. Proper and timely case administration is of prime importance to this court. The court must have reliable records of each attorney payment and attorney fee totals on each case to properly evaluate any fee application. Having a centralized database that can be easily accessed and that is accurate is of extreme importance to the court both in reviewing and granting attorney's fees, given the number of cases this court administers. The court should be able to see on each case how much has been paid to debtor's counsel, the timing of those payments, and what amount is yet to be paid. The court should be able to reasonably inquire as to how much a particular individual or law firm has been paid over a period of time and what is the average attorney fee paid per case.

These records would not be available but for the Standing Chapter 13 Trustee who maintains accounting records on each case and is audited by the United States Trustee yearly. These records are accurate and easily available to the court, debtors, and creditors without extra

9

cost or effort at the Chapter 13 Trustee web site. See https://www.13network.com. Additionally, they are available to any party via the National Data Center. See https://www.ndc.org/

The Chapter 13 Trustee, however, cannot track and, therefore, cannot maintain accounting records on or publish data from post-petition direct payments from debtors to debtor's counsel. Even without the legal justification for directing that all post-petition attorney fees be paid by the Chapter 13 Trustee, the court finds that allowing direct payments would be an obstruction to this court's administration of its 10,473 pending Chapter 13 cases. Efficient case administration dictates that the Court should not permit direct payments of post-petition and post-confirmation attorney fees from debtors to debtor's counsel.

## CONCLUSION

It is therefore ORDERED within 14 days of this order that that debtor's counsel, Robert W. Raley, disgorge to the Chapter 13 Trustee all property of the estate he has been directly paid by the Chapter 13 debtor post-petition.

It is further ORDERED that all post-petition attorney fees in all Chapter 13 cases in the Shreveport division must be disbursed by the Chapter 13 Trustee.

It is still further ORDERED that debtor's counsel in this case and all other cases pending in the Shreveport division are prohibited from accepting payments from debtor(s) of property of the estate without prior court order and the filing of the disclosures required by the Bankruptcy Code, Bankruptcy Rules and the *Amended Standing Order Regarding "No Look" Fees in Chapter 13 Cases*.

# # #